IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SCOTT E. WALTON,

    Plaintiff,

v.                                                                                    Civil Action No.: _____

C.R.H. CATERING COMPANY, INC.,
    **SERVE:**    **CT Corporation System**
                    **4701 Cox Road, Suite 295**
                      **Glen Allen, VA  23060**

    Defendant.

**JURY TRIAL DEMANDED**

## COMPLAINT

The plaintiff Scott E. Walton ("Walton"), by counsel, submits this Complaint against the defendant C.R.H. Catering Company, Inc., ("CRH") for discrimination on account of his physical disability, refusal to engage in an interactive process to consider his request for reasonable accommodation through a job restructuring, and retaliatory discharge for complaining to CRH's management and owners about such discrimination and refusal to consider his requested accommodation, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.

## PARTIES

1. Walton is an individual residing in Caroline County, Virginia.

2. CRH is a corporation engaged in automated food and beverage distribution services that operates and maintains vending machines in industrial settings. Its headquarters are located in Dunbar, Pennsylvania. Its Virginia office is located at 10444 Lakeridge Parkway, Ashland, Virginia 23005.

3. CRH is an "employer" within the meaning of 42 U.S.C. § 12111(5).

## JURISDICTION and VENUE

4. This Court has subject matter jurisdiction over Walton's claims arising under the ADA based on 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(3) (violation of civil rights). Venue is proper in this District as it is the location of the parties and the situs of the events complained of herein

## PROCEDURAL STATUS

5. Walton filed a timely administrative Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 25, 2020. (EEOC Charge No. 846-2020-26463)

6. Walton received a Notice of Right to Sue (Issued on Request) from the EEOC dated March 31, 2021 allowing him 90 days to commence suit in court.

7. This action is timely filed and all procedural prerequisites to suit have been met.

## ALLEGATIONS COMMON TO ALL COUNTS

8. In August 2018, Walton commenced employment with a predecessor of CRH, Campbell's Vending LLC in Fredericksburg, Virginia, as a route sales representative. In or about September 2019, CRH purchased Campbell's Vending and took on its owner Thomas Campbell as a manger. Walton transferred employment to CRH and continued to be managed by Campbell.

9. Walton suffers from degenerative spinal disc and joint disease, which was exacerbated by an automobile accident in May 2016. He has endured two spinal fusions and experiences significant pain due to related nerve damage. Walton takes medication to alleviate the pain. Campbell has been aware of Walton's disability for their entire working relationship.

10. Walton's condition affects several important life functions, including walking, standing, sitting for extended periods of time, and working, all of which impact his work. ADA, 42 U.S.C. § 12102(2)(A). Accordingly, he suffers a disability under the ADA. Walton can perform his job duties with reasonable accommodation, including job restructuring to avoid excessive stops on his driving route. According, he is a qualified individual with a disability under the ADA.

11. Walton's impairment requires him to take breaks between long distances on his route in order to stretch and walk around. Sometimes he must also wait after replenishing a vending machine before heading to the next stop. Consequently, a route that can normally be completed by a non-impaired driver in 8-9 hours would take Walton 12-14 hours because of his need to rest after completing a vending machine replenishing task, or stopping between vending locations to get out of his vehicle to stand, walk and stretch.

12. The COVID-19 shutdown impacted several of the customers on Walton's route. Prior to the shutdown, Walton had been assigned a geographically-concise route in and around Fredericksburg, Virginia. The lockdown, however caused the closure of schools and government centers, and Thomas Campbell added new stops to Walton's route so that it took several more hours to complete per day. Walton could no longer complete each location on his route in a 14-hour day. Further, many of the locations had reduced hours of operations and Walton could not enter into the premises to reach the vending machines when he arrived.

13. In April 2020, Walton asked Campbell to restructure his route so that it was more geographically concise he could complete it within the 12-14 hour period that he had been working. Campbell refused, replying "You're lucky to have a job." Over the next three weeks, Walton continued to request from Campbell a more concise route. Instead, Campbell added new

stops to Walton's routes -- without eliminating other stops -- thereby taking an even longer period of time for Walton to complete his routes.

14. By requesting a restructuring of his routes, Walton was requesting reasonable accommodation under the ADA. As a manager for CRH, Campbell's failure to discuss the requested accommodations constituted a violation CRH's legal obligation to engage Walton in an interactive process. Worse, Campbell's adding additional stops to his routes constituted retaliation in an effort to make the physical exertion to perform Walton's job duties intolerable.

15. Walton subsequently complained to CRH's District Manager Craig Pierce. He let Pierce know about the pain that he was experiencing and how the excessive driving and stops was endangering Walton's health. However, no changes were made to his routes.

16. On July 8, 2020, Walton complained to CRH's Human Resources Manager Carla Ramage. He told her about his physical impairment, the pain he was experiencing, the excessive driving and the additional hours needed to complete his assignments. Walton requested a restructuring of his job to reduce the driving by making the routes more concise. He also asked Ramage to convey his complaints to the owners of CRH.

17. The next day, (July 9) one of the owners of CRH called Walton at approximately 7:00 pm. Walton was asleep following a full day of driving and returned the call at approximately 8:00 pm. The owner answered the phone and yelled at Walton, saying that he was eating dinner with his family.

18. The following day (July 10), Campbell fired Walton for bringing notice of his disability and request for reasonable accommodation to the attention of management and of CRH's owners. Campbell specifically said that the owners were angry that Walton brought the complaints to the attention of human resources.

19. All Walton needed to overcome his disability and perform his job duties was a simple restructuring of his route. The route restructuring that Walton requested was entirely reasonable, as evidenced by the fact that following his termination, his former route was divided between two different CRH drivers in order to make the routes shorter and quicker to complete.

21. Walton was subjected to discrimination and fired on account of his disability, in violation of his rights under the ADA.

20. CRH violated Walton's rights under the ADA by refusing to engage in an interactive process when he requested reasonable accommodation for his disability; by adding additional stops to his driving route so extend the period of time to complete his route when he requested accommodation, and by firing Walton in retaliation for complaining about the need for accommodations for his disability and requesting accommodation from CRH management and ownership.

<u>COUNT I</u>
DISCRIMINATION

22. By discharging Walton because of his disability, as described to herein, CRH violated his rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

23. During all relevant times, Walton was a qualified individual with disabilities within the protected class of the ADA.

24. CRH's conduct in discriminating against Walton evinced a willful and conscious disregard for Walton's rights, and reflected malice, spite and ill-will.

25. As a direct and proximate result of CRH's discriminatory actions, Walton has suffered mental and emotional distress, embarrassment, humiliation, inconvenience, litigation expenses, including attorney's fees.

26. Walton's injuries under this Count entitle him to an award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for his humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to his career; (d) punitive damages; (e) attorney's fees under 42 U.S.C. § 1988; and (f) costs of suit.

COUNT II
FAILURE TO ACCOMMODATE

27. During all relevant times, Walton was a qualified individual with disabilities within the protected class of the ADA.

28. CRH was made aware of Walton's disability before terminating his employment.

29. CRH terminated Walton's employment without engaging in the requisite interactive process. 29 C.F.R. § 1630.2(o)(3).

30. Walton was able to perform his job functions with appropriate accommodation.

31. CRH refused to provide accommodation for Walton's disability, without rational or legitimate justification.

32. CRH's failure to accommodate Walton's disability violated the ADA and evinced malice, spite, and ill-will, was willful and wanton, and evinced a disregard for Walton's rights.

33. Walton's injuries under this Count entitle him to an award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for his humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to his career; (d) punitive damages; (e) attorney's fees under 42 U.S.C. § 1988; and (f) costs of suit.

## COUNT III
## RETALIATORY DISCHARGE

34. By discharging Walton in retaliation for complaining about his disability and requesting a job restructuring to CRH's Human Resources Department and to its owners, as described herein, CRH violated his rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

35. CRH's conduct in retaliating against Walton evinced a willful and conscious disregard for Walton's rights, and reflected malice, spite and ill-will.

36. As a direct and proximate result of CRH's discriminatory actions, Walton has suffered mental and emotional distress, embarrassment, humiliation, inconvenience, litigation expenses, including attorney's fees.

37. Walton's injuries under this Count entitle him to award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for his humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to his career; (d) punitive damages; (e) attorney's fees under 42 U.S.C. § 1988; and (f) costs of suit.

WHEREFORE, the plaintiff Scott E. Walton demands judgment against the defendant C.R.H. Catering Company, Inc., reinstating him to his former position, and awarding him the sum of ONE MILLION DOLLARS ($1,000,000.00) in compensatory and punitive damages; plus attorney's fees, costs of suit, and such other and further relief as this Court may deem just and proper.

Respectfully submitted,

SCOTT E. WALTON

By: /s/
Scott Gregory Crowley
Virginia Bar No. 31216
Attorney for Scott E. Walton
Crowley & Crowley, P.C.
4870 Sadler Road, Suite 300
Glen Allen, VA  23060
Phone:  (804) 205-5010
Fax: (804) 205-5001
Email: scrowley@crowleyandcrowley.com